**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 19-cv-60310-BLOOM/Valle

PARSONS XTREME GOLF, LLC,

      Plaintiff,

vs.

BUYALLPRO, *et al.*

      Defendants.

_____/

## ORDER

**THIS CAUSE** is before the Court upon Plaintiff Parsons Xtreme Golf, LLC's ("Plaintiff") Motion for Entry of Final Default Judgment Against Defendants, ECF No. [40] ("Motion"). A Clerk's Default, ECF No. [37], was entered against Defendants on April 4, 2019, as Defendants failed to appear, answer, or otherwise plead to the Amended Complaint, ECF No. [10], despite having been served. *See* ECF No. [31]. The Court has carefully considered the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the following reasons, Plaintiff's Motion is **GRANTED**.

### I. Introduction

Plaintiff sued Defendants for trademark counterfeiting and infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114; false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); common-law unfair competition; and common law trademark infringement. The Amended Complaint alleges that Defendants are promoting, advertising, distributing, offering for sale and selling goods bearing counterfeits and confusingly similar imitations of Plaintiff's registered trademarks within the Southern District of Florida by operating the Internet based e-

commerce stores and commercial Internet websites operating under the seller identification names and domain names identified on Schedule "A" attached to Plaintiff's Motion for Entry of Final Default Judgment (the "Seller IDs and Subject Domain Names"). *See* ECF No. [40] at 19-21.

Plaintiff further asserts that Defendants' unlawful activities have caused and will continue to cause irreparable injury to Plaintiff because Defendants have (1) deprived Plaintiff of its right to determine the manner in which its trademarks are presented to the public through merchandising; (2) defrauded the public into thinking Defendants' goods are goods authorized by Plaintiff; (3) deceived the public as to Plaintiff's association with Defendants' goods and the websites that market and sell the goods; and (4) wrongfully traded and capitalized on Plaintiff's reputation and goodwill, as well as the commercial value of Plaintiff's trademarks.

In its Motion, Plaintiff seeks the entry of default final judgment against Defendants[1] in an action alleging trademark counterfeiting and infringement, false designation of origin, common-law unfair competition, and common law trademark infringement. Plaintiff further requests that the Court (1) enjoin Defendants from producing or selling goods that infringe its trademarks; (2) disable, and/or cease facilitating access to the seller identification names being used and/or controlled by Defendants (3) disable, or at Plaintiff's election, transfer the domain names at issue to Plaintiff; and (4) award statutory damages.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. "[A] defendant's default does not in itself warrant the court entering a default judgment." *DirecTV, Inc. v. Huynh,* 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Granting a motion for default judgment

---

[1] Defendants are the Individuals, Partnerships, or Unincorporated Associations identified on Schedule "A" of Plaintiff's Motion, and Schedule "A" of this Order. *See* ECF No. [40], at 19-21.

is within the trial court's discretion. *See Nishimatsu*, 515 F.2d at 1206. Because the defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the court must first determine whether there is a sufficient basis in the pleading for the judgment to be entered. *See id.; see also Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore established by the entry of default . . . ."). Upon a review of Plaintiff's submissions, it appears there is a sufficient basis in the pleading for the default judgment to be entered in favor of Plaintiff.

## II. Factual Background[2]

Plaintiff is the registered owner of the following trademarks which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "PXG Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| PXG | 4,779,101 | July 21, 2015 | IC 028. Golf equipment, namely, golf clubs, and golf club grips. |
| PXG (logo) | 4,779,102 | July 21, 2015 | IC 028. Golf equipment, namely, golf clubs, head covers for golf clubs, and golf club grips. |
| PXG | 4,861,237 | November 24, 2015 | IC 028. Golf equipment, namely, golf bags, head covers for golf clubs, and golf tees. |
| PXG (logo) | 4,966,446 | March 31, 2015 | IC 025. Clothing, namely, jackets, pullovers, rainwear, shirts, sweaters, vests, and wind shirts; headwear, namely, caps, hats, and visors. |
| PXG | 4,980,025 | June 14, 2016 | IC 025. Clothing, namely, jackets, pullovers, rainwear, shirts, sweaters, vests, and wind shirts; headwear, namely, caps, hats, and visors. |
| DARKNESS | 5,125,912 | January 17, 2017 | IC 028. Golf equipment, namely, golf clubs. |

---

[2] The factual background is taken from Plaintiff's Amended Complaint, ECF No. [10], Plaintiff's Motion, ECF No. [40], and supporting evidentiary submissions.

3

| Mark | Reg. No. | Reg. Date | Goods |
|---|---|---|---|
| SUGAR DADDY | 5,347,957 | November 28, 2017 | IC 028. Golf clubs. |
| [skull logo with 26] | 5,361,552 | December 19, 2017 | IC 028. Golf equipment, namely, golf clubs, head covers for golf clubs, golf gloves, golf ball markers, divot repair tools. |
| 0311T | 5,362,424 | December 26, 2017 | IC 028. Golf equipment, namely, golf clubs. |
| 0311 | 5,362,426 | December 26, 2017 | IC 028. Golf equipment, namely, golf clubs. |
| 0311 | 5,362,461 | December 26, 2017 | IC 028. Golf equipment, namely, golf clubs. |
| 0311T | 5,362,473 | December 26, 2017 | IC 028. Golf equipment, namely, golf clubs. |
| PXG | 5,423,672 | March 13, 2018 | IC 028. Golf equipment, namely, golf club shafts, golf balls, golf gloves, golf ball markers, divot repair tools, and golf bag covers. |
| PXG | 5,423,673 | March 13, 2018 | IC 018. All purpose sport bags; Carry-all bags; Carry-on bags; Duffel bags; Golf umbrellas; Leather and imitation leather bags; Luggage; Sport bags; Travel bags; Umbrellas. |
| [PXG logo] | 5,423,684 | March 13, 2018 | IC 018. All purpose sport bags; Carry-all bags; Carry-on bags; Duffle bags; Golf umbrellas; Leather bags; Luggage; Sport bags; Travel bags; Umbrellas. |
| PARSONS XTREME GOLF | 5,443,575 | April 10, 2018 | IC 025. Clothing, namely, jackets, pullovers, shirts, sweaters, vests; headwear, namely, caps, hats, and visors. |
| 0311X | 5,525,371 | July 24, 2018 | IC 028. Golf equipment, namely, golf clubs |

*See* Declaration of Frankie Ho, ECF No. [6-2] at 4-5; ECF No. [1-2] (containing Certificates of Registrations for the PXG Marks at issue). The PXG Marks are used in connection with the manufacture and distribution of high quality goods in the categories identified above. *See* Declaration of Frankie Ho, ECF No. [6-2] at 4-5.

4

Defendants, by operating Internet based e-commerce stores and Internet websites under the Seller IDs and Subject Domain Names, have advertised, promoted, offered for sale, or sold goods bearing what Plaintiff has determined to be counterfeits, infringements, reproductions, or colorable imitations of the PXG Marks. *See* Declaration of Frankie Ho, ECF No. [6-2] at 11-15. Although each Defendant may not copy and infringe each PXG Mark for each category of goods protected, Plaintiff has submitted sufficient evidence showing each Defendant has infringed, at least, one or more of the PXG Marks. *See* Declaration of Frankie Ho, ECF No. [6-2] at 11-15. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the PXG Marks. *See* Declaration of Frankie Ho, ECF No. [6-2] at 11, 14.

Plaintiff's counsel retained Invisible Inc, a licensed private investigative firm, to investigate the promotion and sale of counterfeit and infringing PXG branded products by Defendants. *See* Declaration of Frankie Ho, ECF No. [6-2] at 12; Declaration of Kathleen Burns, ECF No. [6-3] at 3; Declaration of Virgilio Gigante, ECF No. [6-5] at 2. Invisible Inc accessed the Internet based e-commerce stores and commercial Internet websites operating under the Seller IDs and Subject Domain Names, placed orders from each Defendant for the purchase of products bearing counterfeits of, at least one, of the PXG Marks, and requested each product to be shipped to its addresses in the Southern District of Florida. *See* Declaration of Kathleen Burns, ECF No. [6-3] at 4. Following the submission of each order, Invisible Inc finalized payment for the products ordered from Defendants via PayPal to Defendants' respective PayPal accounts[3] or payee,[4] via

---

[3] Defendant Numbers 1-23 use money transfer and retention services with PayPal. *See* Declaration of Kathleen Burns, ECF No. [6-3] ¶ 4, n.1.

[4] Defendants 24-26 operate Seller IDs via Wish have their payments processed on their behalf using an aggregate escrow account in the name of ContextLogic "PayPal * Wish" was identified as the payee for each of Invisible Inc's orders from Defendant Numbers 24-26's Wish.com Seller IDs. "WISH

Amazon Payments, Inc.,[5] and/or via Alipay,[6] which are identified on Schedule "A" hereto.[7] *See* Declaration of Kathleen Burns, ECF No. [6-3] at 4.  At the conclusion of the process, the detailed web page captures and images of the items ordered via Defendants' Seller IDs and Subject Domain Names, together with photographs of certain products received, were sent to Plaintiff's representative for inspection. *See* Declaration of Kathleen Burns, ECF No. [6-3] at 4; Declaration of Frankie Ho, ECF No. [6-2] at 13; Declaration of Virgilio Gigante, ECF No. [6-5] at 2.

Plaintiff's representative conducted a review of and visually inspected the PXG branded goods purchased by Invisible Inc and the PXG branded items offered for sale via each of the Seller IDs and Subject Domain Names by reviewing the e-commerce stores and websites operating under each of the Sellers IDs and Subject Domain Names, or detailed web page captures of the products bearing the PXG Marks, together with photographs of certain PXG branded goods received, and determined the products were non-genuine, unauthorized versions of Plaintiff's goods. *See* Declaration of Frankie Ho, ECF No. [6-2] at 13-15.

### III. ANALYSIS

#### A. Claims

---

(ContextLogic Inc.)" is the named PayPal recipient for individual transactions conducted with sellers through Wish.com. *See* Declaration of Kathleen Burns, ECF No. [6-3] ¶ 4, n.1.

[5] Defendant Number 27 operates via the non-party Internet marketplace platform, Amazon.com, an e-commerce marketplace that allows sellers to conduct their commercial transactions privately via Amazon.com's payment processing and retention service, Amazon Payments, Inc. As such, Defendant's payment information is not publicly disclosed. However, because Amazon also operates as a money transmitter for sales made on Amazon.com, it has the ability to identify, and restrain, the payment accounts associated with Defendant. *See* Declaration of Kathleen Burns, ECF No. [6-3] 4, n.1.

[6] Defendant Numbers 28-33 operate via the non-party Internet marketplace platform, AliExpress.com, and have their payments processed on their behalf using Alipay; however, Defendant Numbers 28-30 also use money transfer and retention services with PayPal as an alternative payment method. *See* Declaration of Kathleen Burns, ECF No. [6-3] 4, n.1.

[7] Additional contact email addresses provided by Defendants are also identified on Schedule "A" hereto. *See* Declaration of Kathleen Burns, ECF No. [6-3] 4, n.2.

### 1. *Trademark Counterfeiting and Infringement Under 15 U.S.C. §1114 (Count I)*

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. In order to prevail on its trademark infringement claim under Section 32 of the Lanham Act, Plaintiff must demonstrate that (1) it had prior rights to the mark at issue; and (2) Defendants adopted a mark or name that was the same, or confusingly similar to Plaintiff's trademark, such that consumers were likely to confuse the two. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997)).

### 2. *False Designation of Origin Under 15 U.S.C. § 1125(a) (Count II)*

To prevail on a claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiff must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin that is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval, of Defendants' goods by Plaintiff. *See* 15 U.S.C. § 1125(a)(1). The test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim – i.e., whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992).

### 3. *Common-Law Unfair Competition and Trademark Infringement (Counts III and IV)*

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion

between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under Florida common law. *Rolex Watch U.S.A., Inc. v. Forrester*, No. 83-8381,Civ-Paine, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in *John H. Harland, Inc. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983.)"."); *see also Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975) ("As a general rule . . . the same facts which would support an action for trademark infringement would also support an action for unfair competition.").

The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act. *See PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004).

### B. Liability

The well-pled factual allegations of Plaintiff's Amended Complaint properly allege the elements for each of the claims described above. *See* ECF No. [1]. Moreover, the factual allegations in Plaintiff's Amended Complaint have been substantiated by sworn declarations and other evidence and establish Defendants' liability under each of the claims asserted in the Amended Complaint. Accordingly, default judgment pursuant to Federal Rule of Civil Procedure 55 is appropriate.

### C. Injunctive Relief

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for

the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. *See e.g., PetMed Express, Inc.*, 336 F. Supp. 2d at 1222-23. Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiff to prevent further infringement absent an injunction. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.")

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006). Plaintiff has carried its burden on each of the four factors. Accordingly, permanent injunctive relief is appropriate.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). Plaintiff's Amended Complaint alleges that Defendants' unlawful actions have caused Plaintiff irreparable injury and will continue to do so if Defendants are not permanently enjoined. *See* ECF No. [1]. Further, the Amended Complaint alleges, and the submissions by Plaintiff show, that the goods promoted, advertised, offered for sale, and sold by

9

Defendants are nearly identical to Plaintiff's genuine products and that consumers viewing Defendants' counterfeit goods post-sale would actually confuse them for Plaintiff's genuine products. *See id.* "The net effect of Defendants' actions will cause confusion of consumers … who will believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, and approved by PXG." *See* ECF No. [1] at 28.

Plaintiff has no adequate remedy at law so long as Defendants continue to operate the Seller IDs and Subject Domain Names because Plaintiff cannot control the quality of what appears to be its products in the marketplace. An award of monetary damages alone will not cure the injury to Plaintiff's reputation and goodwill that will result if Defendants' infringing and counterfeiting actions are allowed to continue. Moreover, Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiff's trademarks, which is an illegal act.

Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' products. *See Nike, Inc. v. Leslie*, 1985 WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."). The Court's broad equity powers allow it to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." (citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition

of the use of admittedly valid parts of an invalid whole."). District courts are expressly authorized to order the transfer or surrender of domain names in an in rem action against a domain name. *See* 15 U.S.C. § 1125(d)(1)(C), (d)(2). However, courts have not limited the remedy to that context. *See, e.g., Philip Morris USA v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 230-31 (S.D.N.Y. 2004) (transferring Yesmoke.com domain name to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting that 15 U.S.C. § 1125 "neither states nor implies that an in rem action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace"); *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (ordering the defendants to disclose all other domain registrations held by them and to transfer registration of a particular domain name to plaintiff in part under authority of 15 U.S.C. § 1116(a)).

Defendants have created an Internet-based counterfeiting scheme in which they are profiting from their deliberate misappropriation of Plaintiff's rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities. Ordering the cancellation or transfer of the Subject Domain Names to Plaintiff and requiring the Seller IDs be disabled from further use as platforms for the sale of counterfeit goods is appropriate to achieve this end.

### D. Statutory Damages for the Use of Counterfeit Marks

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good.

15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiff has elected to recover an award of statutory damages as to Count I of the Amended Complaint.

The Court has wide discretion to determine the amount of statutory damages. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). An award of statutory damages is appropriate despite a plaintiff's inability to prove actual damages caused by a defendant's infringement. *Under Armour, Inc. v. 51nfljersey.com*, 2014 WL 1652044, at *7 (S.D. Fla. April 23, 2014) (*citing Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.")); *Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc.*, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits). Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See, e.g.,* S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.

This Court may award statutory damages "without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed." *Perry Ellis Int'l, Inc. v. URI Corp.*, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007). Although the Court is permitted to conduct a hearing on a default judgment in regards to damages pursuant to Federal Rule of Civil Procedure 55(b)(2)(B), an evidentiary hearing is not necessary where there is sufficient evidence on the record to support the request for damages. *See SEC v. Smyth*, 420 F.3d

1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . We have held that no such hearing is required where all essential evidence is already of record.") (citations omitted); *see also PetMed Express*, 336 F. Supp. 2d at 1223 (entering default judgment, permanent injunction and statutory damages in a Lanham Act case without a hearing).

Here, the allegations in the Amended Complaint, which are taken as true, clearly establish Defendants intentionally copied one or more of the PXG Marks for the purpose of deriving the benefit of Plaintiff's world-famous reputation. As such, the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of good as statutory damages to ensure that Defendants do not continue their intentional and willful counterfeiting activities.

The evidence in this case demonstrates that each Defendant promoted, distributed, advertised, offered for sale, and/or sold goods bearing marks which were in fact counterfeits of at least one of the PXG Marks. *See* ECF No. [1]. Based on the above considerations, Plaintiff suggests the Court award statutory damages of $1,000,000.00 against each Defendant. The award should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish Defendants, all stated goals of 15 U.S.C. § 1117(c). The Court finds that this award of statutory damages falls within the permissible statutory range under 15 U.S.C. § 1117(c) and is just.

### E. Damages for False Designation of Origin

Plaintiff's Amended Complaint also sets forth a cause of action for false designation of origin pursuant to § 43(a) of the Lanham Act (Count II). *See* 15 U.S.C. § 1125(a). As to Count II, the allowed scope of monetary damages is also encompassed in 15 U.S.C. § 1117(c). Accordingly, judgment on Count II is limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

### F. Damages for Common Law Unfair Competition and Trademark

**Infringement**

Plaintiff's Amended Complaint further sets forth a cause of action under Florida's common law of unfair competition (Count III) and trademark infringement (Count IV). Judgment on Count III and Count IV are also limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

### IV. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion, **ECF No. [40]**, is **GRANTED** against those Defendants listed in the attached Schedule "A." Final Default Judgment will be entered by separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 16, 2019.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Case No. 19-cv-60310-BLOOM/Valle

## SCHEDULE "A"
### DEFENDANTS BY NUMBER, SELLER ID, SUBJECT DOMAIN NAME, STORE ID, STORE URL, PAYPAL ACCOUNT, and ADDITIONAL E-MAIL ADDRESS

| Defendant Number | Defendant / Seller ID / Subject Domain Name | Store ID / Store URL | PayPal Account / Payee / Additional E-mail Address |
|---|---|---|---|
| 1 | buyallpro | | tales723@gmail.com |
| 3 | babiesdeals1999 | | lethithanhngaebay1@gmail.com |
| 3 | nuskanstore | | lethithanhngaebay1@gmail.com |
| 5 | golfestore | | outdoorgolfsports@hotmail.com |
| 6 | hai.store | | thaithihai.91@gmail.com |
| 9 | iuttkpk | | wanglinwujinzhipin@163.com |
| 10 | josef_1010 | | youssefasouab@gmail.com |
| 11 | kistxfastly | | bendaoud26school@gmail.com |
| 12 | liuxihe569 | | secondebay@163.com |
| 13 | mendivt | | hovanthinhfirst@gmail.com |
| 15 | nasr12 | | nasreddineallaoui6@gmail.com |
| 16 | Pannelshop | | hoahuong274@gmail.com |
| 17 | shopvndeal | | bslethikimhoa@gmail.com |
| 18 | sweetshop-10 | | halimazoudi@gmail.com |
| 19 | the_rolling_stones | | thanhnua8900@gmail.com |
| 20 | topp_seller7 | | bendaoooud@gmail.com |
| 21 | vigates68 | | buidon480@gmail.com |
| 23 | youbah0 | | youssefbahtat1996@gmail.com |
| 24 | 5aafa79b75599a50f028d986 | https://www.wish.com/merchant/5aafa79b75599a50f028d986 | PayPal * Wish |
| 25 | 5ab0a4ed08a22422480577f5 | https://www.wish.com/merchant/5ab0a4ed08a22422480577f5 | PayPal * Wish |
| 26 | mzl881800 | https://www.wish.com/merchant/583d0875f5afa31b72a88464 | PayPal * Wish |
| 27 | Volf Golf | A2MDLYNLPBC6YH | |
| 28 | JMSPORT Store | 3491005 | jack@herrickgolf.com |
| 33 | GolfFactory Store | 3510006 | golfoso@outlook.com |
| 33 | ZXZ Golfclubs Store | 4419029 | golfoso@outlook.com |
| 33 | ZXZ GolfFlagship Store | 3482006 | golfoso@outlook.com |
| 33 | golf-clubs-factory.com | | golfoso@outlook.com |
| 34 | cngolfmaster.com | | cngolf007@gmail.com |
| 35 | golfsalesnow.com | | info@golfsalesnow.com<br>golfsalesnowshop@gmail.com |